UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STACY TAYLOR,

                 Plaintiff,

          v.

LOGIC 20/20 INC., et al.,

               Defendants.

CASE NO. C13-1199JLR

ORDER DENYING MOTION TO DISMISS

## I.   INTRODUCTION

Before the court is Defendant Christian O'Meara's motion to dismiss Plaintiff Stacy Taylor's sexual harassment claims for failure to properly serve him with a copy of the summons and complaint.  (*See* Mot. (Dkt. # 19).)  Mr. O'Meara argues that he has never been properly served in this action.  (*See id.*)  He appears to be correct. Nevertheless, the court has discretion to extend the deadline for service, and this is a suitable circumstance in which to exercise that discretion.  Having considered the submissions of the parties, the governing law, and the record, the court DENIES the

1   motion and GRANTS Ms. Taylor an additional 14 days from the date of this order to

2   serve Mr. O'Meara.  If Ms. Taylor does not file proof of service with the court within 14

3   days, Ms. Taylor's claims against Mr. O'Meara will be dismissed without prejudice.

4                                II.   BACKGROUND

5         This is a sex discrimination case.  Ms. Taylor alleges that Mr. O'Meara, and her

6   employer, Logic 20/20, Inc. ("Logic 20/20"), subjected Ms. Taylor to "unlawful

7   discrimination in the form of gender based harassment."[1]  (Compl. (Dkt. # 1) at 1.)  Ms.

8   Taylor filed this lawsuit in federal court on July 10, 2013.  (*See generally id.*)

9         On November 20, 2013, the court ordered Ms. Taylor to show cause why she had

10  not served Defendants within 120 days pursuant to Federal Rule of Civil Procedure 4(m).

11  (*See* 11/20/13 Order (Dkt. # 3).)  Her attorney at the time, Cheryl Middleton, responded

12  to the court's order, stating that she had informed Ms. Taylor on September 18, 2013, that

13  she would no longer be able to represent Ms. Taylor in this matter and reminded Ms.

14  Taylor of the 120-day time period for service.  (Resp. to Show Cause Order (Dkt. # 5) at

15  1.)  Ms. Middleton also stated that she spoke with Ms. Taylor again about the time period

16  for service on both September 27, 2013, and October 31, 2013.  (*Id.* at 1-2.)  Ms.

17  Middleton also took steps to help Ms. Taylor retain new counsel during this time, and

18  Ms. Taylor retained her present counsel on November 26, 2013.  (*Id.* at 2.)  On the same

19  day, Ms. Middleton filed a praecipe to issue a summons in this case.  (*See* Dkt. # 4.)

20  _____

21        [1] In addition to this claim, which Ms. Taylor alleges as to both Mr. O'Meara and Logic
    20/20, Ms. Taylor further alleges that Logic 20/20 subjected her to retaliation, disparate
22  treatment, pattern and practice discrimination, constructive discharge, unequal pay on the basis
    of gender, and negligent infliction of emotional distress.  (Compl. (Dkt. # 1) at 1.)

1    Based on these facts, the court granted Ms. Taylor an additional 30 days from

2   December 5, 2013, to serve Defendants under Rule 4(m), finding that good cause

3   supported an extension of time.  (12/5/13 Order (Dkt. # 6).)  Ms. Taylor, therefore, had

4   until January 4, 2014, to serve Defendants.  Ms. Taylor's new counsel appeared in this

5   action on December 12, 2013, (Nots. of Appear. (Dkt. ## 7, 8)), and the court issued a

6   summons on December 27, 2013 (Summ. (Dkt. # 10)).

7    Ms. Taylor and Mr. O'Meara dispute the facts surrounding Ms. Taylor's attempts

8   to effect service on Mr. O'Meara.[2]  (*See generally* Mot; Resp. (Dkt. # 23).)  In his motion

9   to dismiss, Mr. O'Meara states that Ms. Taylor "did not serve Mr. O'Meara within the 30

10  day time limit imposed by the Court."  (Mot. at 3.)  Mr. O'Meara asserts that "on or about

11  February 8, 2014," a process server arrived at his home as his 11-year-old daughter was

12  taking out the recycling.  (*Id.*)  Mr. O'Meara then opened the door to talk to the person,

13  who he claims he did not know was a process server, but had to shut the door to his home

14  to control his dogs.  (*Id.*)  Mr. O'Meara asserts that he never heard the person state that

15  she was serving legal papers and that he does not remember confirming his identity to

16  her.  (*Id.*)  Mr. O'Meara claims that, once he had his dogs under control, he re-opened his

17  door, only to discover that the person had left a summons and complaint on his doorstep.

18  (*Id.* at 4.)  He asserts that he was not attempting to evade service.  (*Id.*)

19

20  _____

21   [2] Ms. Taylor served Logic 20/20 on January 3, 2014, at its office by leaving a copy of the
    summons and complaint with Logic 20/20's Treasurer, Teresa Kotwis.  (*See* Mot. at 3; Resp. at

22  2.)  The record does not support a finding that Ms. Kotwis had authority to accept service on
    behalf of Mr. O'Meara.

1    Ms. Taylor's version of the facts differs significantly.  (*See generally* Resp.)  She

2  details seven instances in which various people attempted to serve Mr. O'Meara in

3  January 2014 on her behalf—three times at Logic 20/20's office, once by mail to Logic

4  20/20's office, and three times at Mr. O'Meara's home.  (*See* Resp. at 2-4.)  All of these

5  attempts except one came after the 30-day extension for service had expired.  (*See id.*)

6  Ms. Taylor asserts that Mr. O'Meara intentionally evaded service during this time by

7  having Logic 20/20 employees tell the legal intern who attempted service that Mr.

8  O'Meara was not in the office.  She also asserts that Mr. O'Meara would not answer the

9  door when process servers went to his home.  (*See* Resp. at 3-4.)

10    Ms. Taylor also has a different version of the February 8, 2014, service attempt.

11  She states that when the process server Muffin Anderson arrived at Mr. O'Meara's home

12  on February 8, 2014, a child opened the door and then closed it.  (Resp. at 4.)  However,

13  Ms. Taylor alleges that when Mr. O'Meara opened the door shortly thereafter, Ms.

14  Anderson asked if he was Christian O'Meara, and he responded "yes."  (*Id.*)  Ms.

15  Anderson then stated, "I have papers to serve on you."  (*Id.* at 5.)  Mr. O'Meara then said

16  he was not home, apologized, and closed the door.  (*See id.*)  The process server Ms.

17  Anderson left the summons and complaint on Mr. O'Meara's doorstep.  (*Id.*)

18    Despite their disagreement, there is one fact about this incident on which the

19  parties do agree.  The parties agree that the summons left at Mr. O'Meara's doorstep was

20  not signed by the court clerk and was not marked with the seal of the court.  (*See* Mot. at

21  4, 8-9; Resp. at 4, 7-8 ("The copy of the summons and complaint that was given to

22  Muffin Anderson for service for some reason did not contain a clerk's signature.").)  It is

1 unclear why this was the case. (*See id.*) Plaintiff asserts that other attempts at service in

2 this case were made with a valid, signed summons. (*Id.* at 7.)

3        On February 27, 2014, Mr. O'Meara filed the instant motion to dismiss "pursuant

4 to FRCP 4(m)." (*See* Mot.) He argues that (1) Ms. Taylor did not properly serve him

5 within the prescribed time limitations, (2) service was not effective under Federal Rule of

6 Civil Procedure 4(e), and (3) the unsigned summons was invalid under Federal Rule of

7 Civil Procedure 4(a). (*See id.*)

8                 **III.   ANALYSIS**

9        Federal Rule of Civil Procedure 4 requires plaintiffs to serve defendants with a

10 summons and a copy of the plaintiff's complaint and sets forth the specific requirements

11 for doing so. *See* Fed. R. Civ. P. 4. Rule 4(m) provides that the complaint should be

12 dismissed after 120 days unless "good cause" is shown to extend the service period:

13          If a defendant is not served within 120 days after the complaint is filed, the
         court—on motion or on its own after notice to the plaintiff—must dismiss

14          the action without prejudice against that defendant or order that service be
         made within a specified time. But if the plaintiff shows good cause for the

15          failure, the court must extend the time for service for an appropriate period.

16 Fed. R. Civ. P. 4(m).

17        Under Rule 4(a), a summons must "be signed by the clerk" and must "bear the

18 court's seal." Fed. R. Civ. P. 4(a)(1). This is not a mere technicality. "The issuance of a

19 summons signed by the Clerk, with the seal of the Court, and the time designated within

20 which a defendant is required to appear and attend, are essential elements of the court's

21 personal jurisdiction over the defendant." *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d

22 565, 568 (3rd Cir. 1996); *see also McClain v. 1st Sec. Bank of Wash.*, No. 13-cv-02277-

ORDER- 5

RSM, 2014 WL 457599, at *1 (W.D. Wash. 2014).  "'A summons is process because its service subjects the person served to the court's jurisdiction, which is necessary to validate a judgment that the court might render against the person.'"  *Id.* (quoting Fed. R. Civ. P. 4; 28 U.S.C.A. Practice Commentary C4-4 (1992 & Supp. 1996)).  If this process is inadequate because it lacks a signature and seal, the court has no personal jurisdiction. *Id.* at 569 ("A summons which is not signed and sealed by the Clerk of the Court does not confer personal jurisdiction over the defendant.") (citing 2 James W. Moore, *Moore's Federal Practice* ¶ 4.05 (2d ed. 1996); 4a Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1084 (2d ed. 1987)).  In such a case, it is "unnecessary for the district courts to consider such questions as whether service was properly made . . . ."  *Id.*

Ms. Taylor has made many attempts to serve Mr. O'Meara, but so far none have been successful.  The court has examined the evidence submitted by both sides with respect to the various service attempts.  The only event that comes anywhere close to being proper service is the February 8, 2014, attempt.  (*See* Mot. at 3; Resp. at 2-4.)  In that attempt, Mr. O'Meara answered the door and, depending on who is believed, either closed the door to evade service, or to control his dogs.  (*See id.*)  After that, the process server left the summons and complaint on Mr. O'Meara's doorstep.  (*See id.*)  It is possible that this could amount to proper service depending on the resolution of certain critical disputed facts.  However, for that attempt, both sides agree that the summons left at Mr. O'Meara's doorstep was not signed and did not bear the court's seal.  Thus, this

ORDER- 6

1    attempt, which is far closer than any of the others to being effective service (unsigned

2    summons notwithstanding), does not satisfy Rule 4.

3          Further, the time for serving Mr. O'Meara has clearly passed.  Ms. Taylor's 120

4    days under Rule 4(m) expired on October 7, 2013.  (*See* Dkt.)  Her 30-day extension

5    expired on January 4, 2014.  (*See* 12/5/13 Order.)  Most of Ms. Taylor's service attempts

6    came after these deadlines but, in any event, none of them amounted to proper service on

7    Mr. O'Meara.

8          Accordingly, the court must decide whether to extend the time for service or

9    dismiss this action.  In deciding whether to dismiss a case or extend the time period for

10   service under Rule 4(m), the court employs a two-step analysis.  *Efaw v. Williams*, 473

11   F.3d 1038, 1040 (9th Cir. 2007).  First, if there is a showing of good cause for the delay,

12   the court must extend the time period.  *Id.*  Second, if there is no showing of good cause,

13   the court has discretion to either dismiss without prejudice or extend the time period.  *Id.*

14         Ms. Taylor has not established good cause.  Good cause may be demonstrated by

15   establishing, at a minimum, excusable neglect.  *Boudette v. Barnette*, 923 F.2d 754, 756

16   (9th Cir. 1991).  Four factors are relevant to the determination of excusable neglect:  "(1)

17   danger of prejudice [to the defendant], (2) the length of delay and its potential impact on

18   judicial proceedings, (3) the reason for the delay, including whether it was within the

19   reasonable control of the [plaintiff], and (4) whether the [plaintiff] acted in good faith."

20   *In re Sheehan*, 253 F.3d 507, 514 (9th Cir. 2001).  However, "inadvertence, ignorance of

21   the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect."

22   *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 392 (1993).  Thus,

ORDER- 7

1    the Ninth Circuit has held that attorney error is not excusable neglect.  *See, e.g.*, *Kyle v.*

2    *Campbell Soup Co.*, 28 F.3d 928, 931-32 (9th Cir. 1994) (holding that an attorney's

3    mistake of law interpreting the time to file a post-trial motion did not constitute excusable

4    neglect).

5         Ms. Taylor's efforts do not meet the good cause standard.  The delay in serving

6    Mr. O'Meara has been substantial.  As noted above, both deadlines for serving Mr.

7    O'Meara came and went long ago.  (*See* Dkt.; 12/5/13 Order.)  Further, Ms. Taylor has

8    offered no reason for why she waited until the day before the 30-day extension expired to

9    attempt service.  (*See* Resp.)  Nor has she offered any reason for why she attempted

10   service on Mr. O'Meara with an unsigned summons that had no seal on it.  (Resp. at 4, 7-

11   8.)  And while there is no indication of bad faith on the part of her counsel, there is also

12   no explanation for why Ms. Taylor did not simply move for an additional extension of

13   time to effect service once it became apparent that her initial efforts would not succeed.

14   (*See* Dkt.)  In sum, and examining all the evidence before the court, Ms. Taylor has not

15   demonstrated good cause.

16        Nevertheless, the court has discretion to grant an extension of time even in the

17   absence of good cause.  *Mann v. Am. Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003) ("On

18   its face, Rule 4(m) does not tie the hands of the district court to grant an extension of time

19   to serve the complaint after the 120-day period.").  The court's discretion to extend time

20   for service under Federal Rule 4(m) is broad.  *Henderson v. United States*, 517 U.S. 654,

21   661 (1996) (noting that Rule 4's 120-day time period for service "operates not as an outer

22   limit subject to reduction, but as an irreducible allowance.")  However, it is not limitless.

1   *Efaw*, 473 F.3d at 1041.  In making discretionary extension decisions under Rule 4(m), a

2   district court may consider factors 'like . . . prejudice to the defendant, actual notice of

3   the lawsuit, and eventual service." *Id.* (*citing Troxell v. Fedders of N. Am., Inc.*, 160

4   F.3D. 381, 383 (7th Cir. 1998)); *accord Scott v. Sebelius*, 379 F. App'x 603, 604 (9th Cir.

5   2010).

6          Here, it is appropriate to extend the deadline for service one last time.  Mr.

7   O'Meara clearly has actual notice of the lawsuit at this point, and the evidence before the

8   court indicates that he may have known about it for some time.  And while that is not

9   sufficient to give the court personal jurisdiction, it certainly militates in favor of allowing

10  additional time for service.  Further, it is difficult to imagine what good would come from

11  dismissing Mr. O'Meara.  Logic 20/20 has already been served, and this case will

12  proceed against it.  (*See* Aff. of Service (Dkt. # 11).)  Mr. O'Meara asserts that Ms.

13  Taylor could simply re-file without any difficulty.  (Mot. at 2, 5.)  But if this happens,

14  presumably, the new case would simply be consolidated with this one, creating an

15  unnecessary procedural complication.  If Mr. O'Meara is correct, there is nothing to be

16  gained from dismissal save delay and frustration for Ms. Taylor.  In contrast, there is

17  much to be lost.  Ms. Taylor has undertaken a substantial amount of effort and expense

18  attempting to serve Mr. O'Meara up to this point.  In addition, the court would risk

19  approving of potentially evasive conduct and placing its imprimatur on a possible attempt

20  to avoid process.  Finally, Mr. O'Meara's claims of prejudice (*see* Mot. at 6-7) are

21  questionable at best given that he has likely had actual notice of this lawsuit for some

22  time.

ORDER- 9

# IV.   CONCLUSION

In light of these considerations, the court DENIES Mr. O'Meara's motion to dismiss and GRANTS Ms. Taylor an extension of 14 days to effect service.  If Ms. Taylor does not file proof of service with the court within 14 days of the date of this order, the court will dismiss Mr. O'Meara from this case without prejudice.

Dated this 8th day of April, 2014.


JAMES L. ROBART
United States District Judge

ORDER- 10